[Cite as *State v. Phillips*, 2016-Ohio-7049.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103895**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## COZTED PHILLIPS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-597714-A

**BEFORE:**  Kilbane, P.J., Blackmon, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** September 29, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
Paul Kuzmins
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Nathalie E. Naso
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, Cozted Phillips ("Phillips"), appeals from his convictions for having a weapon while under disability, drug possession with a one-year firearm specification, and obstructing official business. For the reasons set forth below, we affirm.

{¶2} On August 28, 2015, Phillips was indicted in a six-count indictment. In Counts 1 and 2, he was charged with having a weapon while under disability and carrying a concealed weapon, both with a forfeiture specification. In Counts 3 and 6, he was charged with drug possession and trafficking in less than 5 grams of cocaine, both with a one-year firearm specification and forfeiture specifications. In Count 4, he was charged with possession of criminal tools, with a furthermore clause identifying the tool as a 9mm semiautomatic weapon, and forfeiture specifications. In Count 5, he was charged with obstructing official business.

{¶3} The state's evidence demonstrated that on July 20, 2015, Cleveland Police Detective Thomas Barry ("Detective Barry") and Sergeant Baeppler, together with other officers from the Cleveland Police Gang Impact Unit ("CPGIU"), were on patrol in two separate vehicles in the Buckeye neighborhood in response to complaints of "gang, gun, and drug activity." Detective Barry, who has 17 years of experience as a police officer, and Sergeant Baeppler, who has 20 years of experience, both testified that they have extensive training in dealing with gangs and identifying individuals who may be in possession of illegal weapons.

**{¶4}** At approximately 10:00 p.m., as the officers turned northbound from Buckeye Road onto East 117th Street, a one-way street, the officers observed approximately four individuals loitering in East 117th Street, near a car that was parked on the right side of the road. The officers continued on, then circled around the block a second time to investigate. At this time, Phillips, who was standing in front of the vehicle, moved to the front passenger side. According to Sergeant Baeppler, Phillips bent slightly at the knees and slid his arm along his body, placing an object on the ground under the car. Phillips then fled. The officers testified that in their experience, this motion is consistent with a suspect taking a weapon out of his waistband. Sergeant Baeppler subsequently found a loaded, black, semiautomatic handgun under the car near the right front tire.

**{¶5}** According to Detective Barry, Phillips fled southbound on East 117th Street, but Detective Barry apprehended him in a backyard. While holding Phillips on the ground, and as he was being handcuffed, Detective Barry found several rocks of suspected crack cocaine directly under Phillips.

**{¶6}** After test firing the weapon, it was determined to be operational. The officers admitted that no DNA analysis was performed on the gun. In an interview with Phillips at the Justice Center after his arrest, Phillips told the officers that the weapon belonged to a juvenile who was at the scene. Phillips admitted to possessing crack cocaine.

**{¶7}** After analysis, the suspected crack cocaine was determined to be crack cocaine in an amount of less than 5 grams. This was stipulated by the parties. The parties also stipulated that in 2014, Phillips was convicted of aggravated riot in Stark County.

**{¶8}** At the close of the state's case, the trial court acquitted Phillips of Count 6, the trafficking charge. Phillips did not present evidence, and the matter was presented to the jury. The jury subsequently convicted Phillips of Counts 1, 3, and 5, having a weapon while under disability, drug possession with a one-year firearm specification, and obstructing official business. The jury acquitted him of Counts 2 and 4, carrying a concealed weapon and possession of criminal tools. Phillips was sentenced to a total of two years of imprisonment. He now appeals, assigning the following sole assignment of error for our review:

Assignment of Error

Trial counsel was ineffective when he failed to pursue a meritorious motion

to suppress based upon the unlawful seizure of [Phillips].

**{¶9}** Within this assignment of error, Phillips argues that the arresting officers lacked reasonable, articulable suspicion to justify an investigatory stop because he and his friends were simply hanging out, and some of the individuals who had been in the street had already begun to walk back to the sidewalk by the time the officers returned to the area. Therefore, he argues that at a minimum, the drugs recovered from him would have been suppressed if he had effective trial counsel.

**{¶10}** To prevail on a claim of ineffective assistance of counsel, a defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 667-668, 692-693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. McGuire*, 80 Ohio St.3d 390, 397, 1997-Ohio-335, 686 N.E.2d 1112.

**{¶11}** In order to establish deficient performance, it must be shown that, under the totality of the circumstances, counsel's representation fell below an objective standard of reasonableness. *Id*. at 688. A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988). A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 689. Debatable trial tactics and strategies generally do not constitute deficient performance. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643. In order to establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id*.

**{¶12}** The failure to file a motion to suppress is not per se ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52. As explained in *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550,

the failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record demonstrates that the motion would have been successful if made. Even if some evidence in the record supports a motion to suppress, counsel is still considered effective if counsel could reasonably have decided that filing a motion to suppress would have been a futile act.

*Id.* at ¶ 28.

{¶13} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them, per se, unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An investigative stop or *Terry* stop is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, a police officer may stop and briefly detain a person if the officer has reasonable suspicion based upon specific articulable facts that the suspect is engaged in criminal activity. *Id*. at 21-22.

{¶14} In *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), the Ohio Supreme Court analyzed "what degree of conduct must a police officer observe to give rise to a 'reasonable suspicion.'" *Id*. at 178. The *Bobo* court held that the "propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *Id*. at paragraph one of the syllabus. The court further held that

where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others.

*Id*. at paragraph two of the syllabus.

{¶15} In making this determination, the *Bobo* court found the following facts to be significant:

(1) [T]he area in which the actions occurred was an area of very heavy drug activity in which weapons were prevalent; (2) it was nighttime, when weapons could easily be hidden; (3) * * * one of the officers who approached the vehicle in which Bobo was sitting, had about twenty years of experience as a police officer and numerous years in the surveillance of drug and weapon activity — included in this experience were about five hundred arrests each for guns or drugs city-wide and over one hundred arrests in the area in which Bobo was parked; (4) [the officer's] knowledge of how drug transactions occurred in that area; (5) [the officer's] observations of Bobo disappearing from view then reappearing when the police car was close, looking directly at the officers and then bending down as if to hide something under the front seat; (6) [the officer's] experience of recovering weapons or drugs when an individual would make the type of gesture made by Bobo in ducking under his seat; and (7) the police officers' being out of their vehicle and away from any protection if defendant had been armed.

*Id.* at 180.   *Accord State v. Simmons*, 2013-Ohio-5088, 5 N.E.3d 670, ¶ 16 (12th Dist.).

{¶16} However, as this court explained in *State v. Fincher*, 76 Ohio App.3d 721, 603 N.E.2d 329 (8th Dist.1991),where a defendant approaches an occupied car on foot and then, upon seeing the police, retreats from the scene, this is not sufficient activity to justify an investigative stop, even in an area of drug activity.   Similarly, in *State v. Walker*, 90 Ohio App.3d 132, 628 N.E.2d 91 (8th Dist.1993), this court held that the mere

fact that a defendant runs when approached by a police officer in an area of drug activity is not sufficient to justify an investigative stop.

{¶17} In this matter, the record demonstrated that the CPGIU was patrolling the area because of complaints of "gang, gun, and drug activity" in response to recent crimes involving firearms and acts of violence. The stop occurred at approximately 10:00 p.m., when weapons could easily be hidden. The officers of the CPGIU had extensive training on dealing with gangs and identifying individuals who may be in possession of weapons. The record also established that the officers have extensive knowledge of how drug transactions occur in that area. While on patrol, the officers observed a group of people loitering in the street. The officers left the area and circled around the block. When they returned, some of the individuals who had been in the street were on the sidewalk, but two males remained in the street near a parked car. The officers noted that while Phillips was watching them, he made a motion against his body and then placed an object under the vehicle. The officers testified that with their knowledge and experience and having made hundreds of arrests, this motion was consistent with a suspect removing a weapon from the waistband, an area where a gun is typically held. It is a furtive gesture. Moreover, after Phillips placed the object under the vehicle, he immediately began to flee.

{¶18} In light of all of the foregoing, we conclude that the officers had reasonable suspicion based upon specific articulable facts that Phillips was engaged in criminal activity. Supported by the totality of the surrounding circumstances, and by

application of the factors set forth in *Bobo*, the officers properly conducted an investigative stop of Phillips. Therefore, we are unable to conclude that Phillips's counsel was ineffective for failing to file a motion to suppress. *Accord State v. Vallejo*, 8th Dist. Cuyahoga No. 88405, 2007-Ohio-2508 (counsel was not ineffective for failing to file a motion to suppress where the suspect discarded crack cocaine as he fled through the abandoned house, was pursued and apprehended by the police); *State v. White*, 8th Dist. Cuyahoga No. 93109, 2010-Ohio-521 (sufficient articulable facts to justify an investigative stop where the officers patrolling a "high drug area" saw males "making furtive gestures up between the cars and appeared to be throwing something under cars"); *State v. Spencer*, 8th Dist. Cuyahoga No. 86441, 2006-Ohio-1200 (sufficient articulable facts to justify an investigative stop where the defendant turned away and approached the nearest apartment, began knocking then dropped an object and fled as officers approached); *State v. Love*, 8th Dist. Cuyahoga No. 61312, 1992 Ohio App. LEXIS 4225 (Aug. 20, 1992) (sufficient articulable facts to justify an investigative stop where the officers were patrolling a high crime area and observed the appellant dispose of an object and flee as the officers approached.)

{¶19} Appellant's sole assignment of error is overruled.

{¶20} Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

PATRICIA A. BLACKMON, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR