[Cite as *State v. Brown*, 2021-Ohio-753.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                           Court of Appeals No. S-20-015

    Appellee                                           Trial Court No. 19 CR 838

v.

Adrian Jermaine Brown                       **DECISION AND JUDGMENT**

    Appellant                                          Decided:  March 12, 2021

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Hotz, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellant, Adrian Brown, from the

March 9, 2020 judgment of the Sandusky County Court of Common Pleas.  For the

reasons that follow, we affirm.

{¶ 2} Appellant sets forth one assignment of error:

{¶ 3} The trial court abused its discretion and erred to the prejudice of Appellant by denying his motion to suppress evidence.

**Background**

{¶ 4} On September 5, 2018, appellant was driving a semi-tractor trailer truck on the Ohio Turnpike in Sandusky County, Ohio, when he was stopped for speeding by Trooper Christopher Beyer of the Ohio State Highway Patrol. In the cab of the truck, the trooper smelled the raw odor of marijuana and observed a small amount of marijuana. Appellant got out of the cab of the truck, was handcuffed, Mirandized and placed in the patrol car. The trooper searched the truck's cab and found a loaded gun and more marijuana.

{¶ 5} On September 5, 2019, appellant was indicted for improper handling of firearms in a motor vehicle in violation of R.C. 2923.16(B), a fourth degree felony.

{¶ 6} On November 15, 2019, appellant was arraigned and entered a plea of not guilty.

{¶ 7} On January 29, 2020, appellant filed a motion to suppress, claiming there was no basis for a probable cause search, and any evidence discovered was illegally seized and should be suppressed. A suppression hearing was held that day, and the trial court denied the motion.

{¶ 8} On March 9, 2020, appellant entered a plea of no contest to the indicted charge, was found guilty and was sentenced. Appellant timely appealed arguing the trial court abused its discretion when it denied his motion to suppress.

2.

**Appellant's Motion to Suppress**

{¶ 9} Appellant sought an order from the trial court to suppress the evidence the state intended to use at trial, as he claimed the evidence was illegally seized or obtained in violation of his constitutional rights. Appellant referred to the trooper's report and investigative notes to describe the events surrounding the traffic stop and search of the truck. Appellant argued the only basis for the traffic stop was an "alleged 6 miles per hour on a three lane major highway." Appellant noted the posted speed limit was 70 m.p.h. and "[t]here were no other observed traffic violations * * * other than the alleged speed that could have been as low as 76 MPH."

{¶ 10} In his motion, appellant set forth that after he was stopped, he was asked to step down from the cab, he was Mirandized, his person was searched and no contraband was found. Appellant further set forth "[t]he trooper states that he and another trooper <u>then</u> began a probable cause search." Appellant asserted "[a]t this point, if not earlier, the interaction with [appellant] should have ended and [appellant] should have been legally permitted to go on his way."

{¶ 11} Appellant submitted:

> to qualify as the basis for probable cause, the State will have to establish that:
>
> 1) the office[r] had expertise and proven ability to accurately identify the smell of, for example, growing marijuana.
>
> 2) officer was in a place he had a right to be when he detected this odor.

3.

3)  he identified the odor as that of growing marijuana.

{¶ 12} Appellant maintained "considering the basis of the stopping of the vehicle and the circumstances that followed thereafter, there was clearly no basis for a probable cause search.  Any evidence discovered therefor must be suppressed."  In support of his position, appellant cited to *State v. Woljevach*, 160 Ohio App.3d 757, 2005-Ohio-2085, 828 N.E.2d 1015 (6th Dist.).

{¶ 13} In the *Woljevach* case, a search warrant was issued after law enforcement smelled raw marijuana in the barn on Woljevach's farm.  *Id.* at ¶ 4-5.  A search was conducted pursuant to the warrant, and marijuana plants were found.  *Id.* at ¶ 6.  The plants were seized and Woljevach was arrested and charged with illegal cultivation of marijuana.  *Id.* at ¶ 7.  Woljevach filed a motion to motion to suppress, which the trial court denied.  *Id.*

{¶ 14} On appeal, Woljevach argued "to find that an officer can smell growing marijuana overreaches the permissible scope of the plain-smell doctrine" set forth in *State v. Moore*, 90 Ohio St.3d 47, 734 N.E.2d 804 (2000).  *Id.* at ¶ 21.  Woljevach asserted "*Moore* dealt with burning marijuana, marijuana smoke, or harvested marijuana, not growing marijuana [and] [a]n extension of *Moore* to growing marijuana is not warranted."  *Id.*

{¶ 15} We noted the probable-cause affidavit contained an averment that a law enforcement officer could, and previously had, successfully detected the odor of growing marijuana.  *Id.* at ¶ 23.   We further noted that at the hearing on the motion to suppress, Woljevach presented no evidence to rebut the officer's expertise at smelling growing

4.

marijuana. *Id.* We observed the trial court found the officer's assertions in the probable-cause affidavit were credible, and we concluded we would not disturb that finding. *Id.*

## Suppression Hearing

{¶ 16} Trooper Beyer was the only witness called to testify at the hearing on the motion to suppress; he testified to the following. The trooper described his training and work as a law enforcement officer for 15 1/2 years, including his specialized training in the recognition and detection of marijuana. In the academy, he had training on the raw and burnt odor of marijuana, he was shown those substances, and in his career, he had no less than 1,000 marijuana-related instances.

{¶ 17} On September 5, 2018, the trooper was in a marked patrol car, in uniform, on patrol. He was "in the 84 pull-off," standing next to his patrol car, when he observed "a semi come over a hill." The truck was in the center lane with no vehicles in front of it, and it appeared to be speeding. The trooper activated his laser, tracked the truck, and received readings of 78, 77 and 76 miles per hour; the posted speed limit was 70 m.p.h. The trooper described his training on the laser device and detailed the device's calibration. The trooper "flagged" the truck to pull over and the truck stopped by the roadside.

{¶ 18} The trooper approached the truck, asked if he could open the passenger door, and upon opening the door, smelled an odor of raw marijuana. The trooper advised the driver, appellant, that he was stopped for speeding, and appellant was asked to produce his license, registration and insurance. The trooper then noticed a small can on the right front floor of the truck with "a little small piece of marijuana bud that was

5.

smaller than my * * * pinkie fingernail." The trooper asked appellant to step out of the truck. Appellant was only wearing boxer shorts, so he "goes into the back bunk there * * * 'cause it was a * * * sleeper cab. * * * It's got a bunk bed in the back, a single mattress." Appellant put on pants and stepped out of the truck.

{¶ 19} Appellant walked to the front of the patrol car, where the trooper handcuffed him, read him his Miranda rights and placed him in the backseat of the patrol car. Appellant was "placed in investigative detention" based on the bud of marijuana and the odor of raw marijuana, and handcuffed for the trooper's safety because of "the known nexus between drugs and guns." At that point, the trooper said he had "probable cause to search the vehicle because of the odor of raw marijuana and the plain view of the marijuana residue or the flower - - bud." The trooper stated he did not ask for appellant's permission to search the truck's cab, as appellant's permission was not needed.

{¶ 20} Trooper Beyer summoned Trooper Missig, a motor carrier inspector. Trooper Beyer was also a motor carrier inspector, but the program he used through the FMCSA, Federal Motor Carrier Safety Administration, was not working. Trooper Beyer explained "it's a very serious offense to have any form of drugs that are not physically prescribed * * * in your cabin, specifically, you can't have marijuana, and that's a 24-hour out of service violation."

{¶ 21} After Trooper Missig arrived, Trooper Beyer searched the entire cab of the truck, starting with the front half, then the second half or sleeper area. Trooper Beyer testified the cab was "all one open area * * * [there was] a little curtain * * * that wasn't closed." Trooper Beyer found and seized another bud of marijuana, a pack of rolling

6.

papers and a loaded handgun under the pillow in the bunk area. Appellant was placed under arrest. Trooper Beyer sent the marijuana buds to the state patrol crime lab; no tests were run on the buds.

{¶ 22} At the conclusion of the hearing, the judge ruled "the gun was lawfully uncovered, and * * * cannot [be] suppress[ed] * * * so * * * [the] motion is denied."

## Standard on Appeal

{¶ 23} Appellate review of a Crim.R. 12(C)(3) motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When the trial court decides a motion to suppress, it assumes the role of trier of fact and is in the best position to resolve questions of fact and to assess witness credibility. *Id.* A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* An appellate court must then independently decide as a matter of law whether the trial court's conclusions satisfy the appropriate legal standard. *Id.*

## Assignment of Error

{¶ 24} Appellant argues the trial court abused its discretion when it denied his motion to suppress evidence. Appellant acknowledges that the smell of marijuana by a person qualified to recognize the odor is sufficient to establish probable cause to search, but he contends the trooper's search of the cab of the truck was beyond the scope of the offenses of speeding and possession of less than 100 grams of marijuana. Thus, appellant submits the gun discovered under a pillow in the sleeper portion of the truck's cab must be suppressed as a fruit of the poisonous tree.

7.

{¶ 25} Appellant notes the trooper did not testify that, after he smelled raw marijuana and saw a marijuana flower in plain view, he observed any violations of law which would lead him to suspect appellant was harboring additional contraband in the truck. Nor did the trooper testify that he detected an overwhelming odor of raw marijuana, which appellant asserts would have justified probable cause to believe a large quantity of marijuana was in the truck's cab. Since a strong odor of marijuana was not detected and two marijuana flowers were found by the trooper in the truck's cab, appellant contends there was no probable cause to search the remainder of the cab for additional contraband. In support, appellant cites to *State v. Price*, 2013-Ohio-130, 986 N.E.2d 553 (6th Dist.).

{¶ 26} The *Price* case involved the stop of a vehicle for speeding, with Price as the only passenger in the vehicle. *Id.* at ¶ 3. The police officer testified he placed the driver "'in handcuffs, patted him down, found $1,175 in cash, smelled the odor of burnt marijuana on [the driver's] person and inside [of] the vehicle, and detected an odor of an alcoholic beverage on [the driver's] person.'" *Id.* The driver was arrested for OVI. *Id.*

{¶ 27} The officer asked if Price could drive the vehicle, and in order to ensure Price was not under the influence, the officer had Price get out of the vehicle. *Id.* at ¶ 4. The officer testified he observed Price was "'very fidgety, very nervous, couldn't stand still, shuffling his feet, kept moving his hands around.'" *Id.* Price was asked "'if he was sure he didn't have anything on him, [Price] said, well, I'll empty out my pockets.'" *Id.* As Price emptied his pockets, the officer said Price "'pulled out a piece of cellophane plastic wrapper and placed it on the trunk of the vehicle.'" *Id.* Price was asked what it

8.

was, and he said "'that's nothing, that's a piece that I didn't smoke earlier.'" *Id.* Price was handcuffed and put into a separate patrol vehicle from the driver. *Id.*

{¶ 28} Based on the foregoing, the officer believed another crime was being committed: there may be more marijuana in the vehicle. *Id.* at ¶ 5. The vehicle was searched, including the trunk, and more marijuana and digital scales were found. *Id.* After being charged with a drug crime, Price filed a motion to motion to suppress the evidence, which the trial court granted. *Id.* at ¶ 1. The trial court found the warrantless search of the vehicle did not fall within the search incident to arrest exception or the automobile exception to the Fourth Amendment's warrant requirement. *Id.* The state appealed. *Id.*

{¶ 29} We reversed, finding "where an officer detects a strong odor of raw marijuana, but no large amount is found within the passenger compartment of the vehicle, the officer has probable cause to search the trunk." *Id.* at ¶ 16.

## Law

### Search and Seizure

{¶ 30} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, guarantee a person's right to be free from unreasonable searches and seizures. *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). The temporary detention of a motorist by law enforcement during a traffic stop is a seizure. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

{¶ 31} When a motorist is lawfully detained for a traffic violation, a police officer may delay the motorist for a period of time to issue a ticket or a warning. *State v.*

9.

*Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12. This time frame includes a sufficient period to conduct a computer check on the driver's license, license plates and registration. *Id. See also Prouse* at 659. If a motorist's detention is continued beyond the time frame required for the traffic stop, the officer must have additional facts which give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. *Batchili* at ¶ 15.

{¶ 32} Reasonable, articulable suspicion has been described as "something more substantial than inarticulate hunches." *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The determination of whether reasonable suspicion exists to justify a stop is based on the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶ 33} Further, under the automobile exception to the warrant requirement of the Fourth Amendment, law enforcement may search a motor vehicle without a warrant if the officer has probable cause to believe the vehicle contains contraband. *United States v. Ross*, 456 U.S. 798, 809, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Moreover, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825.

{¶ 34} Probable cause has been defined as "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offence with which he is charged." *Ash v. Marlow*, 20 Ohio 119, 1851 WL 16 (1851), paragraph one of the syllabus.

10.

**Speeding**

{¶ 35} R.C. 4511.21 provides in relevant part:

(B) It is prima-facie lawful, in the absence of a lower limit declared or established pursuant to this section by the director of transportation or local authorities, for the operator of a motor vehicle * * * to operate the same at a speed not exceeding the following:

* * *

(14) Seventy miles per hour on all rural freeways;

* * *

(C) [I]t is unlawful for any person to exceed any of the speed limitations in division (D) of this section. * * *

(D) No person shall operate a motor vehicle * * * upon a street or highway as follows:

* * *

(4) At a speed exceeding seventy miles per hour upon a freeway as provided in division (B)(14) of this section; * * *.

**Marijuana**

{¶ 36} The Supreme Court of Ohio has determined "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need be no other tangible evidence to justify a warrantless search of a vehicle." *Moore*, 90 Ohio St.3d at 48, 734 N.E.2d 804.

11.

**Analysis**

{¶ 37} Upon review, appellant did not raise the issue of the legal sufficiency of the traffic stop in his motion to suppress or his assignment of error. Notwithstanding, we find the record establishes that appellant was properly stopped after the trooper observed appellant speeding. Appellant challenges his detention after the stop, the probable cause search of the truck's cab and the scope of the search. We will address these issues in turn.

{¶ 38} The record shows that following the lawful traffic stop, Trooper Beyer smelled and observed marijuana in the truck's cab, and detained appellant beyond the time frame required for the traffic stop. We find the odor and sight of marijuana provided the trooper with reasonable and articulable suspicion of criminal activity beyond that which prompted the traffic stop for speeding. Thus, we conclude the drug-related, criminal activity justified Trooper Beyer's prolonged detention of appellant, and did not violate appellant's Fourth Amendment rights.

{¶ 39} With respect to the warrantless search of the truck, we find probable cause existed to conduct the search. The record contains competent, credible evidence that Trooper Beyer was adequately qualified to recognize the smell, as well as the sight, of marijuana. The trooper testified he had specialized training in the recognition and detection of marijuana and had over 15 years of experience as a law enforcement officer, which included no less than 1,000 marijuana-related instances. No evidence was presented to dispute the trooper's qualification to recognize marijuana. Hence, we find, based on the evidence in the record and the holding in *Moore*, that Trooper Beyer had

12.

probable cause to conduct a warrantless search of the truck's cab, which search did not violate appellant's Fourth Amendment rights. Further, pursuant to the holding in *Ross*, we find Trooper Beyer was justified in searching the entire cab of the truck.

{¶ 40} We therefore conclude the trial court did not abuse its discretion when it denied appellant's motion to suppress. Accordingly, appellant's assignment of error is not well-taken.

{¶ 41} The judgment of the Sandusky County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____

_____
JUDGE

Christine E. Mayle, J. _____

Myron C. Duhart, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.