[Cite as *State v. Kinney*, 2019-Ohio-629.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 106952

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**DARIUS KINNEY**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-617832-A

**BEFORE:** Celebrezze, J., E.T. Gallagher, P.J., and Headen, J.

**RELEASED AND JOURNALIZED:** February 21, 2019

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Kristin M. Karkutt
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Defendant-appellant, Darius Kinney ("appellant"), brings the instant appeal challenging his convictions and sentence for aggravated vehicular homicide, failure to stop after an accident, and tampering with evidence. More specifically, appellant argues that he was denied the effective assistance of counsel because his trial counsel failed to file a motion to suppress, and that the trial court's imposition of consecutive sentences was contrary to law. After a thorough review of the record and law, this court affirms.

## I.    Factual and Procedural History

**{¶2}** On May 29, 2017, at 1:00 a.m., appellant was operating his vehicle at an excessive rate of speed, 51 mph in a 35 mph zone. As appellant's vehicle approached the intersection of East 93rd Street and Gibson Street in Cleveland, Ohio, his vehicle struck and killed two individuals, Denise Bradley and Leo Pinkard, as they were attempting to cross East 93rd Street.

Appellant failed to stop after his vehicle struck the two victims and failed to render aid. Appellant fled the scene traveling southbound on East 93rd Street.

{¶3} Later that same day, approximately 12 hours later, Cleveland police received an anonymous tip that led investigating officers to appellant's residence. Investigating officers observed appellant's vehicle backed into his garage. The vehicle was backed into the garage such that the front half of the vehicle was observed by investigating officers. Although a blanket covered a portion of the hood of the vehicle, officers were able to observe damage to the vehicle's windshield. The damage to the windshield was consistent with what had been observed at the scene of the accident.

{¶4} As officers were approaching appellant's vehicle, appellant exited his residence and admitted to investigating officers that he had been driving his vehicle the previous evening. Appellant also stated to officers that he was going to turn himself in. Appellant was subsequently arrested.

{¶5} Appellant was charged in the following four-count indictment with the following offenses: (1)-(2) aggravated vehicle homicide in violation of R.C. 2903.06(A)(2)(a), third-degree felonies; (3) failure to stop after accident in violation of R.C. 4549.02(A), a third-degree felony; and (4) tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony. Appellant pleaded not guilty to the indictment.

{¶6} After unsuccessful plea negotiations, appellant eventually pleaded no contest to the indictment on January 2, 2018. The trial court found appellant guilty on all four counts.

{¶7} On February 16, 2018, the trial court held a sentencing hearing. The state and appellant's counsel filed sentencing memorandums. The state advocated for the imposition of consecutive sentences. Appellant's trial counsel advocated for the imposition of community

control sanctions. Several individuals wrote letters to the trial court on appellant's behalf. These individuals also provided statements to the trial court at the sentencing hearing. Family members of the victims also provided statements to the trial court at the sentencing hearing. The trial court ultimately sentenced appellant to the following prison term: four years on Count 1, four years on Count 2, two years on Count 3, and two years on Count 4. The trial court ordered each count to be served consecutively for an aggregate prison sentence of 12 years.

{¶8} Appellant thereafter filed the instant appeal and assigns two errors for our review.

I. Appellant's Sixth Amendment rights were violated because [trial] counsel did not file a motion to suppress.

II. Appellant's sentence is contrary to law because the record does not support the imposition of consecutive sentences.

## II. Law and Analysis

### A. Ineffective Assistance of Counsel

{¶9} In appellant's first assignment of error, he argues that he was denied the effective assistance of counsel because his counsel failed to file a motion to suppress.[1]

{¶10} In order to establish a claim of ineffective assistance of counsel, a defendant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial court proceedings would have been different. *State v. Cobb,* 8th Dist. Cuyahoga No. 106928, 2018-Ohio-5043, ¶ 16, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Reasonable probability" is such "probability sufficient to undermine confidence in the outcome." *Strickland* at 694. An appellant's failure to prove either prong of

---

[1] We note though that appellant's trial counsel did file a motion in limine a week prior to trial seeking to exclude any photographs of either victim and photographs of appellant's SUV. The trial court denied this motion.

the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

{¶11} We note that the failure to pursue a motion to suppress in the trial court does not automatically establish an ineffective assistance of counsel claim on appeal. *State v. Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-8166, ¶ 31.

> To establish ineffective assistance of counsel for failure to pursue a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question and that there was a reasonable probability both that a motion to suppress would have been successful if pursued and that suppression of the challenged evidence would have changed the outcome of the case.

*Id.*

{¶12} Trial counsel is not obligated to pursue a motion to suppress if such a motion would be futile. *Id.* "'Even if some evidence in the record supports a motion to suppress, counsel is still considered effective if counsel could reasonably have decided that filing a motion to suppress would have been a futile act.'" *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶ 28, quoting *State v. Suarez*, 12th Dist. Warren No. CA2014-02-035, 2015-Ohio-64, ¶ 13. Therefore, if established principles of law demonstrate that a motion to suppress would have been denied, counsel cannot be considered ineffective for failing to pursue such a motion. *State v. Brooks,* 11th Dist. Lake No. 2011-L-049, 2013-Ohio-58, ¶ 57.

{¶13} Appellant argues that all evidence seized in the instant matter was seized in violation of the Fourth Amendment. More specifically, appellant argues that the plain view exception to the warrant requirement is not applicable because the area searched, appellant's garage, fell under the protections of the Fourth Amendment because the garage was within the curtilage of his home.

**{¶14}** Under the Fourth Amendment, the state is "prohibited from making unreasonable, warrantless intrusions into areas where people have legitimate expectations of privacy." *State v. Crenshaw*, 8th Dist. Cuyahoga No. 90635, 2008-Ohio-4859 ¶11, citing *United States v. Chadwick*, 433 U.S. 1, 7, 53 L.Ed.2d 538, 97 S.Ct. 2476 (1977).

> It is now well established that Fourth Amendment protections extend to the "curtilage" of the home. *U.S. v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). The curtilage is an area immediately adjacent to a person's home that he or she may reasonably expect will remain private. *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). Therefore, the right of the police to come into the curtilage is highly restricted. *State v. Woljevach*, 160 Ohio App.3d 757, 2005-Ohio-2085, 828 N.E.2d 1015 (6th Dist.). Absent a warrant, police have no greater rights on another's property than any other visitor has. *Id.* The only areas of the curtilage where the officers may go are those impliedly open to the public. *Id.*

*Id.* at ¶ 12.

**{¶15}** In support of his ineffective assistance of counsel claim, appellant cites to *Collins v. Virginia,* __ U.S. ___, 138 S.Ct. 1663, 201 L.Ed.2d 9 (2018), a recently decided United State Supreme Court case. We note that *Collins* was decided on May 29, 2018, and appellant entered his no contest plea on January 2, 2018. As such, *Collins* could not have been relied upon by his trial counsel. Therefore, to the extent that appellant argues that the holding in *Collins* supports his argument that his trial counsel should have filed a motion to suppress, we do not agree.

**{¶16}** Furthermore, the court in *Collins* dealt with the automobile exception to the warrant requirement, whereas the instant matter deals with the plain view exception. The precise issue in *Collins* was "whether the automobile exception to the Fourth Amendment permits a police officer, uninvited and without a warrant, to enter the curtilage of a home in order to search a vehicle parked therein." *Id.* at 1668. Thus, *Collins* is not directly applicable to the instant matter.

{¶17} Nevertheless, we find *Collins* to be factually distinguishable. In *Collins*, the property that was subject to an illegal search was a stolen motorcycle. This stolen motorcycle was fully covered by a tarp and parked on the top of the driveway at Collins's girlfriend's home, but was partially visible by investigating officers while they viewed the property from the street. The court found that the area where the motorcycle was parked was inside a partially enclosed top portion of the driveway that adjoined to the house and was therefore within the curtilage of the home. As such, the court held that "[t]he automobile exception does not permit the warrantless entry of a home or its curtilage in order to search a vehicle." *Id.* at 1668.

{¶18} In the instant matter, investigating officers observed video footage taken from an RTA bus that showed a black SUV striking and killing two individuals as they crossed East 93rd Street traveling east to west. Investigating officers also received an anonymous tip indicating that appellant was the driver of the SUV. Based upon this information, officers thereafter visited appellant's residence. As these officers were on the street, they viewed appellant's vehicle, a black SUV, from the street. The hood of appellant's SUV was partially covered by a blanket, but officers were able to view the SUV's cracked windshield from the street. Officers noted that the damage to the windshield was consistent with the damage as observed in the RTA bus video.

{¶19} The state argues that appellant's SUV was a valid search under the plain view exception to the warrant requirement. In order to justify the warrantless seizure of property under the plain view exception, the following must be established: "'(1) the seizing officer must be lawfully present at the place from which he can plainly view the evidence; (2) the officer has a lawful right of access to the object itself; and (3) it is immediately apparent that the item seized is incriminating on its face.'" *State v. Grimes*, 8th Dist. Cuyahoga No. 94827,

2011-Ohio-4406, ¶ 33, quoting *Horton v. California*, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). "The United States Supreme Court has found that the Fourth Amendment 'protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares.'" *State v. Logan,* 8th Dist. Cuyahoga No. 88472, 2007-Ohio-2636, ¶ 67, quoting *California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (2001).

{¶20} We find that under the plain view exception to the warrant requirement, the warrantless search of appellant's SUV was not in violation of the Fourth Amendment. Appellant's vehicle was observed from the street by investigating officers. Investigating officers did not have to shield their eyes as they observed the SUV's damaged windshield. *Id.* The SUV was partially in the garage with the front end partially out in to the driveway. The officers were lawfully present at appellant's house to follow up on an anonymous tip. Because these officers had a lawful right to be at appellant's residence based on this tip, the officers had a lawful right of access to the evidence. *See State v. Young*, 2015-Ohio-1347, 31 N.E.3d 178 (12th Dist.) (plain view exception applied because evidence was viewed outside on the defendant's patio where the officer had a right to be because officers had received an alert that defendant's girlfriend was attempting to purchase pseudoephedrine for the manufacture of methamphetamine). Lastly, it was immediately apparent that the property seized was incriminating on its face, i.e., appellant's SUV matched the SUV in the RTA bus video and the damage to the windshield was consistent with the damage as observed in the video.

{¶21} We find these facts analogous to *Willoughby v. Dunham*, 11th Dist. Lake No. 2010-L-068, 2011-Ohio-2586. In *Dunham*, the Eleventh District affirmed the trial court's denial of Dunham's motion to suppress based upon the plain view doctrine. The court noted

that "the victim of the hit-skip filed a police report in which she identified the location of the accident; the type of vehicle that struck her vehicle; the license plate number of the vehicle; and a description of the driver of the vehicle." *Id.* at ¶ 18. An investigating officer used this information to find the vehicle owner's address "and, before pulling into the driveway, observed the subject vehicle from his cruiser. The vehicle had been backed into the driveway and the officer testified he was able to observe 'fresh damage on the front bumper of the vehicle.'" *Id.*

**{¶22}** In affirming the trial court's denial of Dunham's motion to suppress, the court noted that

> [T]he officer drove to appellant's address in service of a "legitimate societal purpose," viz., investigating the reported hit-skip. Upon his arrival, the officer was able to see the damage to the vehicle in "plain view" from the street (even before entering appellant's driveway). Prior to knocking on appellant's door, the officer took a closer look at the damage to the pickup to confirm his initial observations. Because any member of the public could have observed what [the investigating officer] saw from the street or appellant's driveway, appellant clearly had no reasonable expectation of privacy in the condition of his pickup. Thus, no Fourth Amendment interest was implicated by the officer's conduct in viewing the damaged vehicle.

*Id.* at ¶ 22.

**{¶23}** We find the instant matter analogous to *Dunham*. In the instant matter, officers went to appellant's home to investigate the homicide. Therefore, the officers were lawfully present at the place from which they plainly viewed appellant's SUV. As officers viewed the SUV, they also had a lawful right of access to the SUV. Lastly, it was immediately apparent that the SUV was incriminating on its face.

**{¶24}** To the extent that appellant argues that the SUV was within the curtilage of the home, we do not agree. The incriminating nature of the evidence, the damage to the SUV's windshield, was immediately apparent from the officer's lawful viewpoint from the street.

Because the damage to the SUV was clearly visible from the street, appellant could not have had an expectation of privacy with regards to the SUV. Therefore, officers did not have to enter the curtilage of appellant's home to view the incriminating nature of the evidence. *See State v. Morgan,* 5th Dist. Fairfield No. 13-CA-30, 2014-Ohio-1900 (because officers were not lawfully present in the curtilage of the defendant's home when they observed several marijuana plants on a rear deck of the home, the plain view exception did not apply).

{¶25} As such, there was no Fourth Amendment violation by the investigating officers's conduct in viewing the damage to the SUV. *Id.* at ¶ 22. Given these facts and based upon the plain view exception to the warrant requirement, any such motion appellant's counsel could have filed would have been futile.

{¶26} Based on the foregoing analysis, we find that appellant's trial counsel's failure to pursue a motion to suppress was not ineffective because we find that there was no basis to suppress the evidence in question. We therefore cannot find that appellant's trial counsel was deficient in failing to file a motion to suppress that would have been futile. *State v. Watts*, 8th Dist. Cuyahoga No. 104188, 2016-Ohio-8318, ¶ 22.

{¶27} Because appellant has failed to demonstrate that counsel's performance was deficient, we need not consider the "reasonable probability" prong; i.e. that the outcome of the case would have been different. *Madrigal*, 87 Ohio St.3d at 389, 721 N.E.2d 52.

{¶28} Accordingly, appellant's first assignment of error is overruled.

## B. Consecutive Sentences

{¶29} In his second assignment of error, appellant argues that the trial court's imposition of consecutive sentences was not supported by the record.

**{¶30}** We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16. R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

**{¶31}** Appellant argues that the trial court's consecutive sentences findings are not clearly and convincingly supported by the record as required by R.C. 2953.08(G). More specifically, appellant argues that the trial court's imposition of an aggregate prison sentence of 12 years is beyond what is necessary to protect the public, deter him from committing future crimes, and rehabilitate him. To this end, appellant argues that the trial court imposed consecutive sentences because the trial court did not believe appellant's statements at the sentencing hearing that appellant did not know that he struck the victims with his vehicle.

**{¶32}** R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the

offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶33}** Compliance with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). Further, the reviewing court must be able to discern that the record contains evidence to support the findings. *State v. Davis*, 8th Dist. Cuyahoga No. 102639, 2015-Ohio-4501, ¶ 21, citing *Bonnell* at ¶ 29. A trial court is not, however, required to state its reasons to support its findings, nor is it required to precisely recite the statutory language, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell* at ¶ 37.

**{¶34}** In the instant matter, in making the requisite findings under R.C. 2929.14(C)(4), the trial court stated:

> In this instance, the court is imposing those counts consecutively for this reason: [t]he court finds it's necessary to protect the public from future crime by you. You have a significant criminal history, and I know that — I received letters saying that you're not a criminal. Now, you may be a nice person. You certainly are a hard worker. Your family loves you, but you have a number of criminal offenses and many convictions in this court, Cleveland Muni[cipal] Court, and the hope probably from the prior judges was that you would get past that and use your talent in the community for good as opposed to being back in court again, but your behavior on May 29th brought about tragedy.
>
> So the court finds it is necessary to protect the public from future crime and/or to punish you by imposing a consecutive sentence on these four counts.
>
> The court finds that consecutive sentences are not disproportionate to the seriousness of your conduct. You killed two people, left them in the street, drove

home and then tried to hide your crime. And I know you told the police when they came to your house that you were going to turn yourself in, but I hear that all the time. * * *

So the court finds that consecutive sentences here is not disproportionate to the seriousness of your conduct and to the danger that you pose to the public. Again, you had a prior conviction for fleeing and eluding. You had a conviction for obstructing official business, and you had a prior conviction for failure to comply.

The court also finds at least two of these offenses were committed as part of a course of conduct. The aggravated vehicular homicide, leaving the scene and hiding the car and the harm caused by these multiple offenses were so great or unusual that no single prison term for them reflects adequately the seriousness of your conduct.

I mean, you committed a terrible crime that took the life of two people, and then you fled and tried to hide it.

The court also finds that your history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime committed by you.

None of this had to occur, but it did occur, and you compounded the agony and criminality by fleeing and not taking responsibility immediately for it.

(Tr. 74-76.)

{¶35} In our review of the record, we find that the trial court made the appropriate consecutive sentence findings during the sentencing hearing. In particular, the trial court found that the imposition of consecutive sentences was necessary to protect the public from future crime by appellant or to punish appellant and that such sentences would not be disproportionate to the seriousness of appellant's conduct and the danger appellant poses to the public.

{¶36} We further note that although the trial court need only make one of the three findings set forth in R.C. 2929.14(C)(4)(a)-(c), the trial court found that both (C)(4)(b) and (c) applied. With regards to subsection (b), the trial court found that at least two of the offenses were committed as part of a course of conduct. Further, with regards to subsection (c), the trial

court found that appellant's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by appellant.

{¶37} The trial court also incorporated its consecutive sentence findings into its sentencing journal entry as required by *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659. In its sentencing journal entry, that trial court found that

> Consecutive service is necessary to protect the public from future crime or to punish [appellant]; that the consecutive sentences are not disproportionate to the seriousness of [appellant's] conduct and to the danger [appellant] poses to the public; and that, at least two fo the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of [appellant's] conduct, or [appellant's] history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by [appellant].

{¶38} Appellant further argues that the trial court did not explain *why* appellant's conduct required the imposition of consecutive sentences or how it will protect the public. Simply put, this is not a requirement under Ohio law. A trial court must only note that it engaged in the R.C. 2929.14(C)(4) analysis and that it "considered the statutory criteria and specifie[d] which of the given bases warrants its decision." *Edmonson*, 86 Ohio St.3d at 326, 715 N.E.2d 131. *State v. Blevins*, 2017-Ohio-4444, 93 N.E.3d 246 (8th Dist.). In *Blevins,* we noted that a trial court is not required to give a "'talismanic incantation of the words of [R.C. 2929.14(C)(4)], provided that the necessary findings can be found in the record and are incorporated in the sentencing entry.'" *Blevins* at ¶ 22, quoting *Bonnell* at ¶ 37.

{¶39} To the extent that appellant also argues that the state changed its position regarding its recommendation at sentencing, we find no merit to this argument. During the pretrial proceedings, the state indicated that if appellant pleaded guilty to an amended indictment, the

state would "leave the sentence to the discretion of the [trial court,]" but that the state would "advocat[e] for incarceration." (Tr. 5-6.) Appellant rejected the plea offer and instead pleaded no contest to the indictment. The state and appellant's trial counsel both filed sentencing memorandums. The state argued for incarceration and the imposition of consecutive prison sentences in its memorandum and at the sentencing hearing. Thus, we find no merit to appellant's arguments that the state in any way changed its recommendation at the sentencing date. In our review of the record, we find that the state was seeking incarceration throughout the entirety of the proceedings.

{¶40} For all the foregoing reasons, we conclude that the trial court made the appropriate consecutive sentence findings both at the sentencing hearing and within the sentencing journal entry. The record clearly reflects that the trial court engaged in the correct analysis required under R.C. 2929.14(C)(4). *See State v. Hart*, 8th Dist. Cuyahoga No. 104387, 2017-Ohio-290, ¶ 7. We are therefore able to discern that the record contains evidence to support its findings. As such, we cannot clearly and convincingly find that the record does not support the trial court's findings. Because the trial court made the requisite consecutive sentence findings at the sentence hearing and the trial court incorporated its findings into its sentencing journal entry as required by *Bonnell*, appellant's arguments here are without merit.

{¶41} Accordingly, appellant's second assignment of error is overruled.

### III. Conclusion

{¶42} After thoroughly reviewing the record, we affirm appellant's convictions and the trial court's sentence. Appellant was not denied his constitutional right to the effective assistance of counsel. The trial court made the requisite consecutive sentence findings pursuant

to R.C. 2929.14(C)(4) at the sentencing hearing and properly incorporated its findings into its sentencing journal entry.

**{¶43}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

EILEEN T. GALLAGHER, P.J., and
RAYMOND C. HEADEN, J., CONCUR